UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT BANK & TRUST** | **CIVIL ACTION** |
| **VERSUS** | **No. 06-11382** |
| **CITIZENS COMMUNICATIONS COMPANY,** *et al.* | **SECTION: I/5** |

### ORDER AND REASONS

Before the Court is a motion for judgment on the pleadings filed by defendant, Citizens Communications Company ("Citizens"), pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*.[1] For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

### *BACKGROUND*

Dominion/NW Centre, LLC, and the Hertz Investment Group, Inc., (collectively, "Landlord") own a multistory building, known as Dominion Tower, located on Poydras Street in New Orleans, Louisiana.[2] On or about July 19, 1999, Citizens entered into an office lease ("Primary Lease") comprised of floors eighteen and nineteen of Dominion Tower.[3]

On June 24, 2002, Citizens subleased the office space to plaintiff, Crescent Bank & Trust ("CB&T"), pursuant to a sublease agreement ("Sublease").[4] The Sublease was to expire on

---

[1] R. Doc. No. 27, Mot. J. Pleadings.

[2] R. Doc. No. 10, Am. Compl. ¶¶ 5, 7. Landlord acquired ownership of Dominion Tower from DeBartolo Capital Partnership. *Id.*; R. Doc. No. 27, Def. Ex. A, Primary Lease at 1.

[3] Am. Compl. ¶ 6; Primary Lease.

[4] Am. Compl. ¶¶ 8, 14; R. Doc. No. 27, Def. Ex. B, Sublease.

December 14, 2009, unless it was earlier terminated.[5] The terms of the Sublease provided for its termination if the Primary Lease terminated during the Sublease term.[6] The Primary Lease could be terminated if the premises were damaged by the occurrence of a casualty and, in Landlord's reasonable judgment, the premises could not be substantially repaired and restored to its previous condition within 180 days of the casualty.[7]

On August 29, 2005, Hurricane Katrina struck along the coast of the Gulf of Mexico, causing damage to the leased premises.[8] After the hurricane struck, Landlord, according to CB&T, attempted "to terminate all leases in the Dominion Tower, including the Primary Lease, which [would] have the effect of terminating the Sublease."[9]

CB&T's complaint arises from this attempted termination of the Primary Lease, without objection by Citizens, which CB&T alleges is a breach of the Sublease by Citizens.[10] Specifically, CB&T argues that Citizens breached the Sublease: (1) by failing to meet its obligation, pursuant to section 17(b) of the Sublease, to use commercially reasonable efforts to

---

[5] Sublease § 2, at p. 2; Am. Compl. ¶ 16.

[6] Sublease § 20, at p. 23.

[7] Primary Lease § 20, at p. 41.

[8] Am. Compl. ¶¶ 36, 39-40. The amount of damage Hurricane Katrina caused to Dominion Tower is contested. CB&T claims that only minor damage, consisting primarily of broken windows, occurred. *Id.* ¶¶ 39-41. Citizens argues that this Court should take judicial notice of the severe damage caused by Hurricane Katrina in deciding this motion. R. Doc. No. 27-2, Mem. Supp. Mot. J. Pleadings at 7. Even if this Court were to take judicial notice of the massive effects of Hurricane Katrina in New Orleans, without reviewing evidence with respect to the amount of damage that the Dominion Tower, itself, sustained or when services were restored to it, the Court cannot judicially note that the effects of the hurricane on Dominion Tower were severe. Accordingly, the Court will not decide this motion on judicially noticed evidence of the damage sustained to the leased premises.

[9] Am. Compl. ¶ 43.

[10] *Id.* ¶ 46.

cause Landlord to perform its obligations pursuant to section 20 of the Primary Lease[11] and (2) by impairing CB&T's right of occupancy in violation of section 18 of the Sublease.[12]

Citizens filed this motion for judgment on the pleadings arguing: (1) the Primary Lease gives Landlord the unilateral right to terminate the Primary Lease, (2) the Sublease does not require Citizens to use reasonable efforts to cause Landlord to repair the premises after a casualty, and (3) the Sublease does not require Citizens to maintain the Primary Lease in the manner alleged by CB&T.[13]

## LAW AND ANALYSIS

**I.     Standards of Law**

*A.     Judgment on the Pleadings*

Rule 12(c) of the *Federal Rules of Civil Procedure* provides that: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion is subject to the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

According to the United States Court of Appeals for the Fifth Circuit: "'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean*

---

[11] As part of this claim, CB&T also alleges that section 20 of the Primary Lease does not allow Landlord to unilaterally terminate the Primary Lease. *Id.* ¶¶ 30-31.

[12] *Id.* ¶¶ 32-35, 49-50.

[13] Mem. Supp. at 7-10.

*Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (*citing Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  When analyzing such a claim, "'[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'"  *Id.* (*citing Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).  Further, a district court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *see Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).  The Court evaluates the complaint in the light most favorable to the plaintiff and accepts "all well-pleaded facts as true."  *Jones*, 188 F.3d at 324.

Pursuant to Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.  *Greenberg v. Gen. Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).  The issue is whether the plaintiff is entitled to offer evidence to support his claim, not whether he will ultimately prevail on the merits.  *Great Plains Trust*, 313 F.3d at 313 (*citing Jones*, 188 F.3d at 324).

Generally, in deciding a motion for judgment on the pleadings, if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(c); *Great Plains Trust*, 313 F.3d at 313.  Documents that are "attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."

-4-

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).[14]

B.      *Lease Contract Interpretation*

Pursuant to Louisiana law,[15] the "'lease contract is the law between the parties in defining their respective rights and obligations.'" *Tenet Healthsystem Surgical, L.L.C. v. Jefferson Parish Hosp. Serv. Dist. No. 1*, 426 F.3d 738, 741 (5th Cir. 2005) (*quoting Fleniken v. Entergy Corp.*, 790 So. 2d 64, 73 (La. Ct. App. 2001)); *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991) ("The general rule in Louisiana is that leases are contracts, to be interpreted according to the customary principles of contract interpretation.").

"[T]he interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999); *see Tubos de Acero de Mex. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 486-87 (5th Cir. 2002) (noting the same standard of interpretation in a lease contract). If the lease contract is unambiguous, the plain terms of the agreement govern. *Tubos de Acero*, 292 F.3d at 486-87; *see* La. Civ. Code Ann. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Tex. E.*

---

[14] Because Citizens attached the Primary Lease and Sublease to its motion for judgment on the pleadings, CB&T referred to these documents extensively in its amended complaint, and the leases are central to CB&T's claim against Citizens, this Court will consider the Primary Lease and Sublease in deciding this motion.

[15] Louisiana law governs the Primary Lease and the Sublease at issue in this case. Primary Lease § 54, at p. 64; Sublease § 37, at p. 32.

*Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998).

**II.	Discussion**

*A.	Breach of Section 17(b) of the Sublease*

Citizens is obligated, pursuant to section 17(b) of the Sublease, "to use commercially reasonable efforts to try to cause Landlord to render services . . . and perform obligations required of Landlord under the Primary Lease."[16] The services and obligations include those "with respect to damages or destruction of any 'Relevant Space', including without limitation Landlord's restoration/repair obligations (under Section 20 of the Primary Lease)."[17] Section 20 of the Primary Lease[18] allows the Landlord to terminate the Primary Lease if it determines in its reasonable judgment that premises destroyed by a casualty cannot be repaired within 180 days.[19]

---

[16] Sublease § 17(b), at p. 20.

[17] *Id.* § 17(b)(x), at p. 21.

[18] Section 20 provides, in pertinent part:
>	If Relevant Space is damaged by fire or other casualty ("a <u>Casualty</u>"), and if, in Landlord's reasonable judgment, the Relevant Space can be substantially repaired and restored to its previous condition within 180 days from the occurrence of the Casualty using standard working measures and procedures, then this Lease shall continue in effect and, within that 180-day period, Landlord shall diligently repair and restore the Relevant Space to substantially the same condition as existed before the Casualty, provided that the 180-day period may be extended up to 210 days due to causes beyond the reasonable control of Landlord. If, in Landlord's reasonable judgment, the Relevant Space cannot be so repaired and restored within the 180-day period, then this Lease shall terminate as of the date of the Casualty.

Primary Lease § 20, at p. 41.

[19] CB&T also argues that Landlord may not unilaterally terminate the Primary Lease pursuant to section 20. Am. Compl. ¶¶ 30-31. The language of section 20 specifically allows Landlord to terminate the Primary Lease unilaterally: "If, in Landlord's reasonable judgment, the Relevant Space cannot be so repaired . . . this Lease shall terminate." Primary Lease § 20, at p. 41. Landlord must terminate reasonably, but this does not affect the fact that Landlord may do so without consent of another party.

In the event of a disagreement regarding the time required to repair the premises, the resolution would need to be reduced to writing. *Id.* § 20(e) ("If the parties cannot agree in writing on whether the repairs and restoration described in Section 20(b) will take more than 180 days to make . . . , then the determination may be submitted to arbitration under Section 40."). This does not mean that a writing is required in all circumstances. Rather, the clear meaning of this provision is that *when* a disagreement arises with respect to whether the repair and restoration described in section 20(b) will take more than 180 days to complete, which did not occur between Citizens and

CB&T argues that Citizens, by not contesting Landlord's decision that the premises could not be repaired within 180 days, breached its obligation to use commercially reasonable efforts to ensure Landlord fulfilled its Primary Lease obligations.[20]  The leases are clear that Citizens has an obligation to CB&T to cause Landlord to fulfill its obligations.  If CB&T can prove that Citizens was not commercially reasonable in its dealings with Landlord regarding repair of the premises, CB&T could recover.  Therefore, it is inappropriate to grant a motion for judgment on the pleadings, as CB&T could prove a set of facts upon which relief could be granted.

B.      *Breach of Section 18 of the Sublease*

Citizens is further obligated, pursuant to section 18 of the Sublease,

> (i) to maintain the Primary Lease in full force and effect by performing all obligations of [Citizens] under the Primary Lease not assumed by [CB&T] under this Sublease . . . and (ii) not to enter into any modification of the terms and conditions of the Primary Lease to reduce the term thereof or which would otherwise adversely affect the right of [CB&T] to remain in occupancy of the Premises during the Term.[21]

By the unambiguous language of this provision, Citizens only had to maintain the Primary Lease

---

Landlord, the parties must resolve the disagreement in writing or the dispute can be submitted to arbitration.

The Court also does not agree with CB&T's argument that section 32 of the Primary Lease imposes an obligation upon Landlord not to terminate the Primary Lease pursuant to section 20 in the event of a casualty and that section 32 suspends the 180-day time period for making repairs.  *See id.* § 32, at p. 55 ("If Landlord . . . [due to an unavoidable delay] fail[s] punctually to perform any obligation on its part to be performed under this Lease, then such failure shall be excused and not be a breach of this Lease . . . .").  Section 32 excuses an obligated party from being in breach of the Primary Lease in the event of an unavoidable delay; it does not impose a duty on Landlord not to terminate the lease if an unavoidable delay occurs.

[20] CB&T contends in its opposition memorandum that, because Landlord did not provide the casualty notice as required by section 20 of the Primary Lease until thirty days after it was due, Citizens "arguably could have required [Landlord] to restore the lease premises, but Citizens failed to do so." R. Doc. No. 31, Opp. Mem. to Mot. J. Pleadings at 9.  This Court will not address that contention, however, as CB&T made no mention of this breach in the pleadings.  Similarly, CB&T contends in its opposition memorandum that the time for repair is 370 days, which is the 180-day time period plus an additional 210 days if the Landlord has not completed repairs.  *Id.* at p. 10.  The Court will not address the meaning of the 210-day extension period for the same reason, *i.e.*, it was not mentioned in the amended complaint.

[21] Sublease § 18, at p. 22.

*by performing all of its obligations under the Primary Lease*. CB&T has pointed to no provision of the *Primary Lease* that Citizens has breached, which thereby caused the termination of the Primary Lease. Further, CB&T has also not alleged that Citizens has entered into any *modification* of the terms of the Primary Lease leading to reduction in the Sublease's term. The terms of the Primary Lease specifically allow for its termination in the event of a casualty. Citizens failure to contest Landlord's judgment was not a modification of the Primary Lease's terms. Therefore, CB&T's claims against Citizens for breach of section 18 of the Sublease should be dismissed.

Accordingly,

**IT IS ORDERED** that the motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**. It is granted in that the claims that Citizens breached section 18 of the Sublease are **DISMISSED WITH PREJUDICE**. It is denied in that claims that Citizens breached its obligations to use commercially reasonable efforts, pursuant to section 17 of the Sublease, to cause Landlord to fulfill its obligations pursuant to section 20 of the Primary Lease are not dismissed.[22]

New Orleans, Louisiana, October 15th, 2007.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[22] However, as explained above, section 20 of the Primary Lease does not impose an obligation upon Landlord to agree in writing before terminating the Primary Lease after a casualty.